**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES W. BINNEY,** | : | **CIVIL ACTION NO.: 21-cv-1297** |
| *Plaintiff* | : | **(Honorable Matthew W. Brann)** |
| v. | : | |
| | : | |
| **THE PENNSYLVANIA STATE** | : | |
| **UNIVERSITY,** | : | |
| | : | **JURY TRIAL DEMANDED** |
| *Defendant* | : | |

**PLAINTIFF'S RESPONSE TO STATEMENT OF FACTS IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, James W. Binney, by and through his undersigned counsel, Sidney L. Gold & Associates, P.C., hereby submits Plaintiff's Response to Statement of Facts in Opposition to Defendant's Motion for Summary Judgment.  As set forth in detail below, genuine issues of material fact exist and, accordingly, summary judgment should be denied.

1.      Admitted.

2.      Admitted.

3.      Admitted.

4.      Admitted.

5.      Admitted.

6.      Denied. Plaintiff commenced his employment with the Defendant in 2006 on a part-time basis for the World Campus. (Ex. 1).

7.     Admitted.

8.     Admitted.

9.     Denied. Plaintiff taught various upper-level courses for the Defendant during Banaszak's tenure as Department Head, including Policy Making and Evaluation, American Public Policy, Racial Politics, Campaigns and Elections, Politics of Western Europe, and Political Advertising. (Ex. 1; Ex. 2 at 50:5-15, 130:2-5).

10.     Admitted.

11.     Denied. Banaszak testified only that Susan Welch notified her of future instructional budget cuts. (Ex. 15 at 59:16-60:1). Banaszak "[did] not recall" whether the budget was ever in fact reduced. (Ex. 15 at 60:3-12).

12.     Denied. Banaszak testified only that Susan Welch notified her of future instructional budget cuts. (Ex. 15 at 59:16-60:1). Banaszak "[did] not recall" whether the budget was ever in fact reduced. (Ex. 15 at 60:3-12). Further, Defendant hired significantly younger individuals to teach introductory courses over Plaintiff, including in its selection of Joseph Phillips to teach Scientific Study of Politics. (Ex. 13 at No. 10).

13.     Denied. Defendant hired significantly younger individuals to teach introductory courses over Plaintiff, including in its selection of Joseph Phillips to teach Scientific Study of Politics. (Ex. 13 at No. 10).

14.     Denied as mischaracterization. Defendant could have, and failed to, hire Plaintiff to instruct introductory courses through the World Campus.

15.     Admitted.

16.     Admitted in part, denied in part.  It is admitted only that Defendant awarded Plaintiff a final, full-time contract for the 2017-2018 term. (Ex. 7). It is denied that Banaszak facilitated Plaintiff's 2017-2018 contract with "some difficulty," as Banaszak "[did] not recall" whether the budget was ever in fact reduced. (Ex. 15 at 60:3-12).

17.     Admitted.

18.     Denied as mischaracterization of the record. Defendant's Bachelor of Arts degree in Political Science and its stated prioritization of quantitative methods are not mutually exclusive. Students pursuing a Bachelor of Arts in Political Science can elect to pursue quantitative skills. (Deposition Transcript of Amy Linch ("Ex. 23") at 14:16-20). Moreover, Douglas Lemke ("Lemke") testified that he has never taught a quantitative-centric course, but that he routinely incorporates quantitative methodologies in his qualitative courses. (Deposition Transcript of Douglas Lemke ("Ex. 24") at 31:25-32:17).

19.     Denied. Defendant's Bachelor of Arts degree in Political Science and its stated prioritization of quantitative methods are not mutually exclusive.

Students pursuing a Bachelor of Arts in Political Science can elect to pursue quantitative skills. (Ex. 23 at 14:16-20).

20.     Denied. Linch's testimony that the majority of Political Science Department enrollees will obtain a Bachelor of Arts degree contradicts that "practically no courses" focus on qualitative reasoning. (Ex. 23 at 15:5-10). Lemke, a longstanding, tenured Lecturer in the Department, has never taught a quantitative-centric course. (Ex. 24 at 31:25-32:17). Kruczek, hired in lieu of Plaintiff at the time Defendant represents to have shifted its priorities to quantitative methods, has similarly never taught a quantitative course for Defendant. (Ex. 20 at 30:19-21).

21.     Denied. There is no meaningful distinction between appointing a graduate student and hiring a Lecturer with respect to Counts XIII and XIV. Defendant could have hired Plaintiff to teach said courses.

22.     Denied. There is no meaningful distinction between appointing a graduate student and hiring a Lecturer with respect to Counts XII and XIV. Defendant could have hired Plaintiff to instruct said courses.

23.     Denied. The record does not support that there is any such "practice." In her deposition, Banaszak denied that the Political Science Department reserves teaching positions specifically for graduate students. (Ex. 15 at 50:7-10).

24.     Admitted.

25.     Admitted in part, denied in part.  It is admitted only that Linch testified to the Department's prioritization of quantitative reasoning skills in introductory classes. It is denied that the record contains any supportive curricula or departmental policies to evidence the same.

26.     Denied. Plaintiff underwent extensive quantitative methods training in the course of his doctoral training and previously instructed in research methods. (Ex. 1; Ex. 2 at 33:15-22).

27.     Denied. Plaintiff underwent extensive statistical methods training in the course of his doctoral training and previously instructed in research methods. (Ex. 1; Ex. 2 at 33:15-22).

28.     Denied. Plaintiff has incorporated statistical analysis in his curricula throughout his tenure with Defendant, including in his instruction of Comparing Politics Around the Globe. (Ex. 2 at 97:10-98:11). By way of further response, Kruczek has never taught a quantitative course for Defendant. (Ex. 20 at 30:19-21).

29.     Denied. Nothing in the summary judgment record other than Banaszak's self-serving affidavit supports this contention. Defendant fails to identify the "others" referenced. Moreover, per his own testimony, Kruczek has no experience in quantitative methods instruction prior to or since his hire by Defendant. (Ex. 20 at 30:9-21).

30.     Denied. The citations to the record identified by the Defendant do not stand for the proposition set forth therein. In fact, Banaszak was unable to identify a single example of a graduate student selected over Plaintiff due to superior qualifications. (Ex. 15 at 53:17-54:15).

31.     Admitted.

32.     Admitted.

33.     Denied. The record contains no documentary evidence that Banaszak or Hojnacki counseled Plaintiff or communicated alleged performance concerns to him. To the contrary, Plaintiff's annual performance reviews, generated contemporaneously with his work, contradict Defendant's representation that his performance was inadequate. (Ex. 2 at 59:9-19; Ex. 18).

34.     Denied. The record contains no documentary evidence that Banaszak or Hojnacki counseled Plaintiff or communicated alleged performance concerns to him.

35.     Denied. The record contains no evidence that Banaszak or Hojnacki counseled Plaintiff or communicated alleged performance concerns to him.

36.     Denied. The record contains no evidence that Banaszak or Hojnacki counseled Plaintiff or communicated alleged performance concerns to him.

37.     Denied. The record contains no such documentation.

38.     Denied. The record contains no such documentation.

39.     Denied. The record contains no evidence that Banaszak or Hojnacki counseled Plaintiff or communicated alleged performance concerns to him.

40.     Denied. Hojnacki's alleged concern that Plaintiff was "kind of sloppy" was never incorporated in his annual performance reviews. (Ex. 18). By way of further response, Lemke testified that he found Plaintiff to have exceptional organizational skills. (Ex. 24 at 25:21-25).

41.     Denied. The record contains no evidence that Banaszak or Hojnacki counseled Plaintiff regarding this extra credit assignment, nor was it incorporated in his annual performance review. (Ex. 18).

42.     Denied. The record contains no evidence that Hojnacki counseled Plaintiff regarding this extra credit assignment, nor was it incorporated in his annual performance review. (Ex. 18).

43.     Denied. The record contains no evidence that Hojnacki counseled Plaintiff regarding this extra credit assignment, nor was it incorporated in his annual performance review. (Ex. 18).

44.     Denied. The record contains no evidence that Hojnacki counseled Plaintiff regarding his instruction, nor was it incorporated in his annual performance review. (Ex. 18).

45.     Denied. The record contains no evidence that Defendant counseled Plaintiff regarding this issue, nor was it incorporated in his annual performance review. (Ex. 18).

46.     Denied. The record contains no evidence that Defendant counseled Plaintiff regarding the speed of his communications with students, nor was it incorporated in his annual performance review. (Ex. 18).

47.     Admitted.

48.     Admitted.

49.     Admitted.

50.     Admitted.

51.     Admitted.

52.     Admitted.

53.     Admitted.

54.     Admitted.

55.     Admitted.

56.     Admitted.

57.     Admitted. By way of clarification, Kruczek was thirty-nine (39) years old at the time of Defendant's selections of him over Plaintiff. (Ex. 13 at No. 10).

58.     Admitted.

59.    Denied. Kruczek had taught only one international relations course at the time of his hire by Defendant. (Curriculum Vitae of Gregory Kruczek ("Ex. 25")). Moreover, the Diplomacy Lab, per Kruczek's own testimony, was not an explicitly Middle East course. (Ex. 20 at 30:22-31:6).

60.    Admitted in part, denied in part.  It is admitted only that Kruczek's curriculum vitae reflects Middle East studies. (Ex. 25). It is denied that Kruczek's stated expertise is rare or exceeds Plaintiff's. There is no evidence in the record beyond Banaszak's self-serving affidavit to establish rarity of Kruczek's expertise or that Plaintiff is not similarly qualified, given Plaintiff's extensive background in Middle East course instruction. (Ex. 1; Ex. 2 at 78:23-79:14).

61.    Denied as mischaracterization. Per Kruczek's own testimony, in his capacity as Internship Coordinator, he oversees academic credit process, which does not entail lecture writing. (Ex. 20 at 34:10-18).

62.    Admitted.

63.    Admitted.

64.    Admitted in part, denied in part. It is admitted that Pertner's curriculum vitae reflects teaching experience at The George Washington University and a teaching fellowship. It is denied as to the other qualifications set forth, as they are not identified in her curriculum vitae. (Ex. 21).

65.     Denied. Pertner received the referenced teaching award after her hire by Defendant. As such, it could not have been considered by Defendant in her hire. (Ex. 21).

66.     Admitted.

67.     Denied. Plaintiff adequately exhausted his administrative remedies with respect to the course awarded to Pertner. Per the standards of the Third Circuit, Count XII falls within the scope of Plaintiff's administrative filings and should not be dismissed. The Third Circuit has held that "[o]nce a charge of some sort is filed with the EEOC, this court has held that the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination[.]'" *Hicks v. ABT Assocs., Inc*., 572 F.2d 960, 966 (3d Cir. 1978) (quoting *Ostapowicz v. Johnson Bronze Co*., 541 F.2d 394, 398-99 (3d Cir. 1976).  In making such a determination, the Third Circuit has also noted that "EEOC charges should be liberally construed because they are preferred by laymen and are usually prepared without legal assistance." *Seiple v. Two Farms, LLC*, No. 20-5650, 2021 U.S. Dist. LEXIS 28009, at *7 (E.D. Pa. Feb. 13, 2021) (quoting *Canavan v. Beneficial Fin. Corp*., 553 F.2d 860, 864 (3d Cir. 1977)). Subsequent case law, including a very recent case, has clarified that administrative exhaustion occurs either when the claims are within the scope of the original EEOC charge or are otherwise

reasonably expected to fall under the scope of an ensuing EEOC investigation. *Simko v. U.S. Steel Corp.*, 992 F.3d 198, 207-09 (3d Cir. 2021). As a rule-of-thumb, in determining scope, courts evaluate "(1) whether the claim arises from the same set of facts that support the original charge and (2) whether the claim advances the same theory of discrimination as the original charge." *Simko*, 992 F.3d at 209. Plaintiff's failure to identify Defendant's specific selection of Pertner at the administrative level is not fatal to its ripeness for suit, as it arose from the same set of facts and advances the same theory of discrimination as those identified at the EEOC. At its core, Count XII concerns a teaching position awarded to an individual significantly younger than Plaintiff in the relevant statutory period. In fact, Plaintiff alleges in his EEOC filing that "Since May 2018, I have applied for Part-Time Lecturer positions and have been denied. All the positions that I have applied for I am qualified for. Respondent has instead hired younger or recent graduate students for the positions that I applied for." (Plaintiff's EEOC Charge of Discrimination ("Ex. 22")). Counts XII factually mirrors the non-hires raised in Plaintiff's administrative filings, in that Defendant denied Plaintiff a teaching opportunity as a Non-Tenured Lecturer in favor of a significantly younger, less qualified, less experienced individual. The theory of age discrimination is consistent in every Count of Plaintiff's Complaint, including

Count XII. For these reasons, Count XII is within the scope of Plaintiff's administrative filings and confers administrative exhaustion.

68. Admitted.

69. Denied. Deng lacked any experience as a primary instructor prior to her hire for Count XIII. (Ex. 14).

70. Admitted.

71. Denied. Plaintiff adequately exhausted his administrative remedies with respect to the course awarded to Deng. Per the standards of the Third Circuit, Count XIII falls within the scope of Plaintiff's administrative filings and should not be dismissed. The Third Circuit has held that "[o]nce a charge of some sort is filed with the EEOC, this court has held that the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination[.]'" *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 966 (3d Cir. 1978) (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976). In making such a determination, the Third Circuit has also noted that "EEOC charges should be liberally construed because they are preferred by laymen and are usually prepared without legal assistance." *Seiple v. Two Farms, LLC*, No. 20-5650, 2021 U.S. Dist. LEXIS 28009, at *7 (E.D. Pa. Feb. 13, 2021) (quoting *Canavan v. Beneficial Fin. Corp.*, 553 F.2d 860, 864 (3d Cir. 1977)). Subsequent case law, including a very

recent case, has clarified that administrative exhaustion occurs either when the claims are within the scope of the original EEOC charge or are otherwise reasonably expected to fall under the scope of an ensuing EEOC investigation. Simko v. U.S. Steel Corp., 992 F.3d 198, 207-09 (3d Cir. 2021). As a rule-of-thumb, in determining scope, courts evaluate "(1) whether the claim arises from the same set of facts that support the original charge and (2) whether the claim advances the same theory of discrimination as the original charge." Simko, 992 F.3d at 209. Plaintiff's failure to identify Defendant's specific selection of Deng at the administrative level is not fatal to its ripeness for suit, as it arose from the same set of facts and advances the same theory of discrimination as those identified at the EEOC. At its core, Count XIII concerns a teaching position awarded to an individual significantly younger than Plaintiff in the relevant statutory period. In fact, Plaintiff alleges in his EEOC filing that "Since May 2018, I have applied for Part-Time Lecturer positions and have been denied.  All the positions that I have applied for I am qualified for. Respondent has instead hired younger or recent graduate students for the positions that I applied for." (Plaintiff's EEOC Charge of Discrimination ("Ex. 22")). Counts XIII factually mirrors the non-hires raised in Plaintiff's administrative filings, in that Defendant denied Plaintiff a teaching opportunity as a Non-Tenured Lecturer in favor of a significantly younger, less qualified, less experienced individual. The theory of age discrimination is

consistent in every Count of Plaintiff's Complaint, including Count XIII. For these reasons, Counts XIII is within the scope of Plaintiff's administrative filings and confers administrative exhaustion.

72.     Admitted.

73.     Denied. The record does not establish that Phillips' qualifications were superior to Plaintiff's. Plaintiff's twenty-eight-year tenure as an instructor in the field of Political Science exceeds Phillips' age of twenty-seven. (Ex. 1). Moreover, Plaintiff underwent rigorous statistical methods training in his PhD program and previously taught Research Methodologies at the Kazakhstan Institute of Management, Economics, and Strategic Research. (Ex. 1; Ex. 2 at 33:15-22). By contrast, Phillips had not earned his PhD at the time of his hire over Plaintiff. (Ex. 26).

74.     Admitted.

75.     Denied. Plaintiff adequately exhausted his administrative remedies with respect to the course awarded to Phillips. Per the standards of the Third Circuit, Count XIV falls within the scope of Plaintiff's administrative filings and should not be dismissed. The Third Circuit has held that "[o]nce a charge of some sort is filed with the EEOC, this court has held that the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination[.]'"

*Hicks v. ABT Assocs.*, Inc., 572 F.2d 960, 966 (3d Cir. 1978) (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976).  In making such a determination, the Third Circuit has also noted that "EEOC charges should be liberally construed because they are preferred by laymen and are usually prepared without legal assistance." *Seiple v. Two Farms, LLC*, No. 20-5650, 2021 U.S. Dist. LEXIS 28009, at *7 (E.D. Pa. Feb. 13, 2021) (quoting *Canavan v. Beneficial Fin. Corp.*, 553 F.2d 860, 864 (3d Cir. 1977)). Subsequent case law, including a very recent case, has clarified that administrative exhaustion occurs either when the claims are within the scope of the original EEOC charge or are otherwise reasonably expected to fall under the scope of an ensuing EEOC investigation. *Simko v. U.S. Steel Corp.*, 992 F.3d 198, 207-09 (3d Cir. 2021). As a rule-of-thumb, in determining scope, courts evaluate "(1) whether the claim arises from the same set of facts that support the original charge and (2) whether the claim advances the same theory of discrimination as the original charge." Simko, 992 F.3d at 209. Plaintiff's failure to identify Defendant's specific selection of Phillips at the administrative level is not fatal to its ripeness for suit, as it arose from the same set of facts and advances the same theory of discrimination as those identified at the EEOC. At its core, Count XIII concerns a teaching position awarded to an individual significantly younger than Plaintiff in the relevant statutory period. In fact, Plaintiff alleges in his EEOC filing that "Since May 2018,

I have applied for Part-Time Lecturer positions and have been denied.  All the positions that I have applied for I am qualified for. Respondent has instead hired younger or recent graduate students for the positions that I applied for." (Plaintiff's EEOC Charge of Discrimination ("Ex. 22")). Counts XIV factually mirrors the non-hires raised in Plaintiff's administrative filings, in that Defendant denied Plaintiff a teaching opportunity as a Non-Tenured Lecturer in favor of a significantly younger, less qualified, less experienced individual. The theory of age discrimination is consistent in every Count of Plaintiff's Complaint, including Count XIV. For these reasons, Counts XIV is within the scope of Plaintiff's administrative filings and confers administrative exhaustion.

76.     Denied. Kruczek, a significantly younger individual, is Plaintiff's comparator with respect to Count XVI in that Defendant hired him as a Full-Time, Non-Tenured Lecturer immediately after refusing to renew Plaintiff's contract for the identical position. (Ex. 8; Ex. 9 at p. 2).

77.     Admitted. By way of further response, Plaintiff applied for and expressed interest in myriad positions for the fall 2018 and spring 2019 semesters. (Ex. 2 at 55:24-56:11; Ex. 16; Ex. 17; Ex. 22).

78.     Admitted. By way of further response, Hojnacki confirmed the existence of the pool hiring system in an email dated August 10, 2018, wherein she

stated that Plaintiff "need not apply" for individual courses as he had "already been hired to teach at least one other class for Penn State." (Ex. 12).

79.     Denied. Hojnacki instructed Plaintiff that he "need not apply" for positions as a member of the pool, and made no such qualification that the courses would be awarded exclusively on short notice. (Ex. 12).

80.     Denied. Following the non-renewal of his full-time contract, Plaintiff was awarded several positions by virtue of being in the Defendant's pool, including Introduction to American National Government, Political Advertising, and Comparing Politics Around the Globe. (Plaintiff's Responses to Defendant's First Set of Interrogatories ("Ex. 27") at No. 6.)

81.     Admitted.  However, the course identified by Defendant in paragraph 81 is not one for which Plaintiff alleges discriminatory hiring in this case.

82.     Denied as mischaracterization. As a tenure-track employee, Lemke's application and hiring process is entirely separate from Defendant's hiring process for Non-Tenured Lecturers and for which Plaintiff claims discrimination in this case. In fact, Lemke testified that he can only "answer with respect to tenure-track jobs because those are the only kind I've ever applied for." (Ex. 24 at 38:14-21).

83.     Denied. Hojnacki confirmed the existence of a pool. (Ex. 12). As departmental leadership, Hojnacki's representations of Defendant's hiring process are determinative, not Plaintiff's subjective understanding.

84.    Admitted.

85.    Denied as mischaracterization. Absent Hojnacki's self-serving affidavit, nothing in the record supports these representations.

86.    Denied. Defendant offered Kruczek this position while he was still a student and had not yet obtained his PhD. (Ex. 25). Kruczek testified that he could not accept the position referenced because he was in the process of finishing his dissertation at Virginia Tech. (Ex. 20 at 7:6-25).

87.    Admitted.

88.    Admitted.

89.    Admitted.

90.    Admitted.

91.    Admitted.

92.    Admitted.

93.    Admitted. By way of further response, Plaintiff has extensive experience in the field of International Relations. Plaintiff earned his Masters of Arts and PhD in International Relations Theory from the University of Kentucky and has since taught myriad courses on the subject matter for Defendant and other institutions. (Ex. 1).

94.    Admitted.

95.     Denied. Under Banaszak's leadership as Political Science Department Head, Plaintiff was awarded assignments to teach 400-level courses, including 400-level Policy Making and Evaluation. (Ex. 1; Ex. 2 at 130:2-5).

96.     Denied. Lemke authored letters of recommendation on Plaintiff's behalf to teach 400-level courses at other institutions. (Ex. 24 at 22:20-25).

97.     Admitted.

98.     Admitted.

99.     Denied as mischaracterization. Kruczek's instruction of a single course more than ten years ago prior to his earning any advanced degree in the field of political science did not superiorly qualify him over Plaintiff to teach International Relations Theory. (Ex. 25). Moreover, the course itself was not based in international relations theory, rather, Kruczek testified only that he chose to teach the course through an international relations theory lens. (Ex. 20 at 29:1-14).

100.    Denied. Plaintiff complied with the application directives of the Political Science Department's leadership in the fall of 2019. (Ex. 2 at 55:24-56:11; Ex. 16; Ex. 17).

101.    Denied. Plaintiff complied with the application directives of the Political Science Department's leadership in the fall of 2019. (Ex. 2 at 55:24-56:11; Ex. 16; Ex. 17).

102.   Denied. It is not Plaintiff's subjective belief, but rather a fact, that Plaintiff is more qualified in international relations instruction than Kruczek. (Ex. 1; Ex. 25 at No. 6). Plaintiff earned his Masters of Arts and PhD in International Relations Theory from the University of Kentucky and has since taught myriad courses on the subject matter for Defendant and other institutions. (Ex. 1). Kruczek, by contrast, had only taught one related course more than ten years ago prior to his earning any advanced degree in the field of political science. (Ex. 25). Moreover, said course was not based in international relations theory, rather, Kruczek testified only that he chose to teach the course through an international relations theory lens. (Ex. 20 at 29:1-14).

103.   Admitted.

104.   Admitted.

105.   It is admitted that Plaintiff has extensive instruction experience in Middle East courses including, but not limited to, International Political Economy, International Development, International Relations Theory, Politics of Developing Nations. (Ex. 1; Ex. 2 at 78:25-79:14).  By way of further response, Kruczek had never taught International Relations in the Middle East prior to his hire by Defendant. (Ex. 25).

106.   Denied. Kruczek's curriculum vitae does not reflect that he is an expert in the Middle East. (Ex. 25). Furthermore, Plaintiff's record of training and

instruction establishes that his Middle East qualifications are superior. (Ex. 1).
Thus, if Defendant considered Kruczek's significantly inferior qualifications in the
Middle East as amounting to expertise, Defendant too should have considered
Plaintiff an expert.

107.    Admitted.

108.    Denied. It is inconceivable that Kruczek's brief visits to the Middle
East and undergraduate student work qualified him to teach a 400-level course,
especially in view of Plaintiff's long-term, immersive work in the Middle East.
(Ex. 1; Ex. 25). Plaintiff worked in the Middle East in the capacity of Program
Director of the Kazakhstan Institute of Management, Economics, and Strategic
Research's Executive MBA Program. (Ex. 1; Ex. 2 at 94:24-95:4).

109.    Denied. Kruczek's curriculum vitae is a document that speaks for
itself. By way of further response, Plaintiff worked in the Middle East in the
capacity of Program Director of the Kazakhstan Institute of Management,
Economics, and Strategic Research's Executive MBA Program. (Ex. 1; Ex. 2 at
94:24-95:4; Ex. 25).

110.    Denied. It is inconceivable that Kruczek's brief visits to the Middle
East and undergraduate student work qualified him to teach a 400-level course,
especially in view of Plaintiff's long-term, immersive work in the Middle East.
(Ex. 1; Ex. 25). Plaintiff worked in the Middle East in the capacity of Program

Director of the Kazakhstan Institute of Management, Economics, and Strategic Research's Executive MBA Program. (Ex. 1; Ex. 2 at 94:24-95:4; Ex. 25).

111.   Denied. Plaintiff testified that he is exceedingly more qualified to teach in the area of Middle East International Relations than Kruczek. (Ex. 2 at 94:24-95:17).

112.   Denied.  Plaintiff complied with the application directives of the Political Science Department's leadership in fall 2019 and spring 2020.  (Ex. 2 at 55:24-56:11; Ex. 16; Ex. 17).

113.   Denied. It is not Plaintiff's subjective belief, but rather a fact, that Plaintiff is more qualified in the subject area of international relations in the Middle East than Kruczek. (Ex. 1; Ex. 2 at 94:24-95:17). Plaintiff conducted long-term, immersive work in the Middle East. (Ex. 1; Ex. 25). Plaintiff worked in the Middle East in the capacity of Program Director of the Kazakhstan Institute of Management, Economics, and Strategic Research's Executive MBA Program. (Ex. 1; Ex. 2 at 94:24-95:4; Ex. 25).

114.   Denied. Independent Studies courses facilitate long-term relationships between faculty and students. (Ex. 3 at 93:18-94:6). As a stated priority of the Political Science Department, these relationships are critical opportunities for faculty members to integrate into the Department and establish their status for continued employment. (Ex. 23 at 23:14-17).

115.   Denied as mischaracterization. Plaintiff did not seek Independent Studies assignment as a stand-alone position, but rather in conjunction with the courses he was actively teaching at the time. (Ex. 2 at 83:3-17). Further, Defendant prohibited Plaintiff from accepting students' Independent Studies requests in an effort to marginalize his role in the Department. (Ex. 2 at 85:2-16).

116.   Admitted.

117.   Admitted.

118.   Admitted. By way of further response, Independent Studies provide opportunities for faculty members to integrate into the Department and establish their status for continued employment. (Ex. 23 at 23:14-17).

119.   Admitted.  However, Defendant prohibited Plaintiff from accepting students' Independent Studies requests in an effort to marginalize his role in the Department. (Ex. 2 at 85:2-16).

120.   Denied. Defendant prohibited Plaintiff from accepting students' Independent Studies requests in an effort to marginalize his role in the Department. (Ex. 2 at 85:2-16).

121.   Denied. Defendant prohibited Plaintiff from accepting students' Independent Studies requests in an effort to marginalize his role in the Department. (Ex. 2 at 85:2-16).  Moreover, at all times relevant to this action, Plaintiff complied

with the application directives of the Political Science Department's leadership. (Ex. 2 at 55:24-56:11; Ex. 16; Ex. 17).

122.   Denied. Defendant prohibited Plaintiff from accepting students' Independent Studies requests in an effort to marginalize his role in the Department. (Ex. 2 at 85:2-16).  Moreover, at all times relevant to this action, Plaintiff complied with the application directives of the Political Science Department's leadership. (Ex. 2 at 55:24-56:11; Ex. 16; Ex. 17).

123.   Denied. It is not Plaintiff's subjective belief, but rather a fact, that Plaintiff is more qualified to teach Independent Studies than Kruczek. (Ex. 1). Plaintiff regularly taught Independent Studies until Defendant barred him from doing so. (Ex. 2 at 85:2-16). Further, Kruczek had never instructed Independent Studies prior to his hire by Defendant. (Ex. 25).

124.   Admitted.

125.   Admitted. By way of further response, during his tenure in the Middle East, Plaintiff built an internship program from the ground up, thereby qualifying him substantially more for the coordinator role awarded to Kruczek. (Ex. 1; Ex. 2 at 78:23-79:14).

126.   Denied. Per Kruczek's own testimony, in his capacity as Internship Coordinator, he oversees academic credit process, which does not entail lecture writing. (Ex. 20 at 34:10-18).

127.    Admitted in part, denied in part. It is admitted that Banaszak testified as much. It is denied that Kruczek was more qualified than Binney to run the internship program than Plaintiff. During his tenure in the Middle East, Plaintiff built an internship program from the ground up, thereby qualifying him substantially more for the coordinator role awarded to Kruczek. (Ex. 1; Ex. 2 at 78:23-79:14).

128.    Denied. Kruczek was selected due to his age (thirty-nine). (Ex. 13 at No. 10). Plaintiff was superiorly qualified for the role of Internship Coordinator. During his tenure in the Middle East, Plaintiff built an internship program from the ground up, thereby qualifying him substantially more for the coordinator role awarded to Kruczek. (Ex. 1; Ex. 2 at 78:23-79:14).

129.    Denied. It is not Plaintiff's subjective belief, but rather a fact, that Plaintiff is more qualified to run an internship program than Kruczek. (Ex. 1; Ex. 2 at 78:23-79:14).  During his tenure in the Middle East, Plaintiff built an internship program from the ground up, thereby qualifying him substantially more for the coordinator role awarded to Kruczek. (Ex. 1; Ex. 2 at 78:23-79:14).

130.    Admitted.

131.    Admitted.

132.    Admitted. By way of further response, Pertner's instruction of American Foreign Policy, a distinct and American-centric course, did not qualify

her above Plaintiff to teach Comparing Politics Around the Globe. (Ex. 21).
Plaintiff, by contrast, has an expansive record of teaching Comparing Politics
Around the Globe for Defendant. (Ex. 1).

133.   Denied. Hojnacki's stated considerations did not disqualify Plaintiff,
as he had previously instructed Comparing Politics Around the Globe for
Defendant. (Ex. 1).

134.   Denied. Plaintiff's experience teaching this specific course for
Defendant superiorly qualified him over Pertner. (Ex. 1).

135.   Denied. It is inconceivable that Pertner's instruction of an
introductory course at another institution and undergraduate teaching assistant
experience qualified her over Plaintiff to instruct Comparing Politics Around the
Globe. Pertner's prior instruction of American Foreign Policy, a distinct and
American-centric course, did not qualify her above Plaintiff to teach Comparing
Politics Around the Globe. (Ex. 21). Plaintiff, by contrast, has an expansive record
of teaching Comparing Politics Around the Globe for Defendant. (Ex. 1).

136.   Denied. Plaintiff has incorporated statistical analysis in his curricula
throughout his tenure with Defendant, including in his instruction of Comparing
Politics Around the Globe. (Ex. 2 at 97:10-98:11).

137.    Denied. The record is devoid of any evidence that Plaintiff would not have relocated for the several weeks' summer course had he been afforded the opportunity.

138.    Admitted.

139.    Admitted.

140.    Admitted.

141.    Denied. Hojnacki and Banaszak have set forth contradictory testimony regarding the graduate program and the record is devoid of evidence that sets forth a coherent articulation of the policies and practices of said program. In her deposition, Banaszak denied that the Political Science Department reserves teaching positions specifically for graduate students. (Ex. 15 at 50:7-10). Hojnacki, by contrast, testified that Defendant does in fact "hold open some classes" for graduate students to teach. (Ex. 10 at 64:21-65:2).

142.    Admitted.

143.    Admitted in part, denied in part. It is admitted that Deng was a graduate student and that she was selected to instruct Comparing Politics Around the Globe. It is denied that there was any meaningful distinction between her assignment for the course and Plaintiff's potential hire therefor.

144.    Admitted in part, denied in part. It is admitted that Deng lacked teaching experience. It is denied that the Department prioritized online teaching

experience for graduate students or that Hojnacki communicated as much to Plaintiff. (Ex. 17).

145.   Admitted in part, denied in part. It is admitted that Deng had previously served as a Teaching Assistant. (Ex. 14). It is denied that Deng had the requisite expertise and skill necessary to serve as a primary instructor for Comparing Politics Around the Globe, particularly as compared to Plaintiff's extensive record of instruction thereof. (Ex. 1).

146.   Denied. Hojnacki and Banaszak have set forth contradictory testimony regarding the priorities and practices of the graduate program and the record is devoid of evidence that sets forth a coherent articulation of the policies of said program. In her deposition, Banaszak denied that the Political Science Department reserves teaching positions specifically for graduate students. (Ex. 15 at 50:7-10). Hojnacki, by contrast, testified that Defendant does in fact "hold open some classes" for graduate students to teach. (Ex. 10 at 64:21-65:2).

147.   Admitted.

148.   Denied. Defendant has set forth contradictory testimony regarding the training practices of its graduate program, and the record does not establish that teaching appointments are awarded as part of graduate student training. In her deposition, Banaszak denied that the Political Science Department reserves teaching positions specifically for graduate students. (Ex. 15 at 50:7-10). Hojnacki,

by contrast, testified that Defendant does in fact "hold open some classes" for graduate students to teach. (Ex. 10 at 64:21-65:2).

149.   Admitted.

150.   It is admitted only that Banaszak's self-serving declaration reflects as much. The record is otherwise devoid of evidence regarding the nature of Scientific Study of Politics.

151.   Denied. Phillips had never served as an instructor of record prior to his hire for Scientific Study of Politics in the fall of 2019. It is further denied that his record, while a student himself, as a teaching assistant sufficiently qualified him for said position. (Ex. 26).

152.   Denied. Per Phillips' curriculum vitae, he had not taken his comprehensive exams or served as a Data Manager prior to his hire for said position. (Ex. 26).

153.   Denied. Plaintiff taught Political Science 3 for Defendant in the fall of 2021, a course based heavily in statistical analysis and research methodology. (Ex. 2 at 116:7-13).

154.   Denied. Defendant hired Plaintiff to teach Political Science 3 in the fall of 2021, a course based heavily in statistical analysis and research methodology, thereby undermining its representations that he was not qualified to teach Scientific Study of Politics. (Ex. 2 at 116:7-13).

155.    Admitted.  By way of further answer, Plaintiff complied with the application directives of the Political Science Department's leadership.  (Ex. 2 at 55:24-56:11; Ex. 16; Ex. 17).

156.    Admitted.

157.    Admitted.

158.    Denied. During his tenure in the Middle East, Plaintiff built an internship program from the ground up, thereby qualifying him substantially more for the coordinator role awarded to Kruczek. (Ex. 1; Ex. 2 at 78:23-79:14).

159.    Denied. Plaintiff was qualified to, and did in fact, teach upper-level for Defendant, including Political Advertising, Policy Making and Evaluation, Racial Politics, American Public Policy, Campaigns and Elections, Politics of Western Europe. (Ex. 1; Ex. 2 at 50:5-15). Moreover, during his tenure in the Middle East, Plaintiff built an internship program from the ground up, thereby qualifying him substantially more for the coordinator role awarded to Kruczek. (Ex. 1; Ex. 2 at 78:23-79:14).

160.    Admitted. By way of further response, Plaintiff complied with the application directives of Department leadership following the non-renewal of his full-time contract. (Ex. 16; Ex. 17).

161.    It is not Plaintiff's subjective belief, but rather a fact, that Plaintiff was more qualified for the Full-Time, Non-Tenured Lecturer position awarded to

Kruczek based on his substantial tenure in the role. (Ex. 1; Ex. 3; Ex. 4; Ex. 5; Ex. 6; Ex. 7).

162.   Denied. Kruczek is Plaintiff's comparator, as he was hired in this exact role. (Ex. 13 at No. 10; Ex. 2 at P. 133:6-9).

163.   Denied. Count XVI pertains to Defendant's discriminatory non-appointment of any four courses in the fall 2019 and spring 2020 semesters so as to confer full-time status to Plaintiff. (Ex. 2 at 132:23-133:9).

164.   Admitted.

165.   Denied. Defendant failed to hire Plaintiff due to his age, and the reasons proffered by Defendant are pretext for age discrimination. Foremost, Plaintiff maintained a satisfactory performance rating during his full-time tenure with Defendant. (Ex. 18). Further, there is no evidence in the record that Defendant implemented a reduction of the Political Science Department's workload budget so as to require the elimination of Plaintiff's full-time contract, as Banaszak "[did] not recall" whether the budget was ever in fact reduced. (Ex. 15 at 60:3-12). Moreover, Defendant has failed to set forth a non-discriminatory reason why this position could not have been created for Plaintiff, or why the "budgetary constraints" that resulted in the non-renewal of his contract did not apply to the creation of an identical position for Kruczek the very next semester. (Ex. 13 at No. 11). Defendant's representations that graduate student training necessitated Plaintiff's

non-hires are similarly pretextual, as Defendant set forth contradictory graduate student hiring policies. In her deposition, Banaszak denied that the Political Science Department reserves teaching positions specifically for graduate students. (Ex. 15 at 50:7-10). Hojnacki, by contrast, testified that Defendant does in fact "hold open some classes" for graduate students to teach. (Ex. 10 at 64:21-65:2). Defendant's stated prioritization of quantitative methods instruction as a reason for Plaintiff's non-hires is similarly pretextual, in that Plaintiff underwent extensive quantitative methods training in the course of his doctoral training and previously instructed in research methods. (Ex. 1; Ex. 2 at 33:15-22). As to his comparators, Plaintiff's qualifications were superior for each of the courses and positions identified.

*Gregory Kruczek*

Plaintiff is more qualified in international relations instruction than Kruczek. (Ex. 1; Ex. 25 at No. 6). Plaintiff earned his Masters of Arts and PhD in International Relations Theory from the University of Kentucky and has since taught myriad courses on the subject matter for Defendant and other institutions. (Ex. 1). Kruczek, by contrast, had only taught one related course more than ten years ago prior to his earning any advanced degree in the field of political science. (Ex. 25). Moreover, said course was not based in international relations theory, rather, Kruczek testified only that he chose to teach the course through an international

relations theory lens. (Ex. 20 at 29:1-14). Plaintiff has extensive instruction experience in Middle East courses including, but not limited to, International Political Economy, International Development, International Relations Theory, Politics of Developing Nations. (Ex. 1; Ex. 2 at 78:25-79:14). By way of further response, Kruczek had never taught International Relations in the Middle East prior to his hire by Defendant. (Ex. 25). As compared to Kruczek's brief visits to the Middle East, Plaintiff worked extensively in the Middle East on a long-term basis in the capacity of Program Director of the Kazakhstan Institute of Management, Economics, and Strategic Research's Executive MBA Program. (Ex. 1; Ex. 2 at 94:24-95:4). During his tenure in the Middle East, Plaintiff built an internship program from the ground up, thereby qualifying him substantially more for the Internship Coordinator role awarded to Kruczek. (Ex. 1; Ex. 2 at 78:23-79:14).

## *Elizabeth Pertner*

The record establishes that Plaintiff is vastly more qualified to teach Comparing Politics Around the Globe than Pertner. At the time of Defendant's selection of Pertner over Plaintiff, she had taught a mere three sections of relevant courses at another institution prior to her hire. (Ex. 21).  Pertner's instruction of American Foreign Policy for Defendant, a distinct and American-centric course, did not qualify her above Plaintiff to teach Comparing Politics Around the Globe. (Ex. 21).

Plaintiff, by contrast, has an expansive record of teaching Comparing Politics Around the Globe for Defendant. (Ex. 1). Plaintiff further taught comparative political science courses for Defendant since 2006 and other institutions since 2004. (Ex. 1).

*Qing Deng*

At the time of her hire over Plaintiff, Deng had never served as a primary instructor. (Ex. 14). Plaintiff, by contrast, had specifically taught Comparing Politics Around the Globe for Defendant as a primary instructor. (Ex. 1). Plaintiff further taught comparative political science courses for Defendant since 2006 and other institutions since 2004. (Ex. 1).

*Joseph Phillips*

Plaintiff's twenty-eight-year tenure as an instructor in the field of Political Science exceeds Phillips' age of twenty-seven. (Ex. 1). Moreover, Plaintiff underwent rigorous statistical methods training in his PhD program and previously taught Research Methodologies at the Kazakhstan Institute of Management, Economics, and Strategic Research. (Ex. 1; Ex. 2 at 33:15-22). By contrast, Phillips had not earned his PhD at the time of his hire over Plaintiff. (Ex. 26).

166.   Denied. Plaintiff's qualifications are far superior as to each comparator.

*Gregory Kruczek*

As to instruction in international relations, Plaintiff earned his Masters of Arts and PhD in International Relations Theory from the University of Kentucky and has since taught myriad courses on the subject matter for Defendant and other institutions. (Ex. 1). Kruczek, by contrast, had only taught one related course more than ten years ago prior to his earning any advanced degree in the field of political science. (Ex. 25). Moreover, said course was not based in international relations theory, rather, Kruczek testified only that he chose to teach the course through an international relations theory lens. (Ex. 20 at 29:1-14). Plaintiff has extensive instruction experience in Middle East courses including, but not limited to, International Political Economy, International Development, International Relations Theory, Politics of Developing Nations. (Ex. 1; Ex. 2 at 78:25-79:14). By way of further response, Kruczek had never taught International Relations in the Middle East prior to his hire by Defendant. (Ex. 25). As compared to Kruczek's brief visits to the Middle East, Plaintiff worked extensively in the Middle East on a long-term basis in the capacity of Program Director of the Kazakhstan Institute of Management, Economics, and Strategic Research's Executive MBA Program. (Ex. 1; Ex. 2 at 94:24-95:4). During his tenure in the Middle East, Plaintiff built an internship program from the ground up, thereby qualifying him substantially more

for the Internship Coordinator role awarded to Kruczek. (Ex. 1; Ex. 2 at 78:23-79:14).

*Elizabeth Pertner*

At the time of Defendant selection of Pertner over Plaintiff, she had taught a mere three sections of relevant courses at another institution prior to her hire. (Ex. 21). Pertner's instruction of American Foreign Policy for Defendant, a distinct and American-centric course, did not qualify her above Plaintiff to teach Comparing Politics Around the Globe. (Ex. 21). Plaintiff, by contrast, has an expansive record of teaching Comparing Politics Around the Globe for Defendant. (Ex. 1). Plaintiff further taught comparative political science courses for Defendant since 2006 and other institutions since 2004. (Ex. 1).

*Qing Deng*

At the time of her hire over Plaintiff, Deng had never served as a primary instructor. (Ex. 14). Plaintiff, by contrast, had specifically taught Comparing Politics Around the Globe for Defendant as a primary instructor. (Ex. 1). Plaintiff further taught comparative political science courses for Defendant since 2006 and other institutions since 2004. (Ex. 1).

*Joseph Phillips*

Plaintiff's qualifications are far superior to Phillips'. Plaintiff's twenty-eight-year tenure as an instructor in the field of Political Science exceeds Phillips' age of

twenty-seven. (Ex. 1). Moreover, Plaintiff underwent rigorous statistical methods training in his PhD program and previously taught Research Methodologies at the Kazakhstan Institute of Management, Economics, and Strategic Research. (Ex. 1; Ex. 2 at 33:15-22). By contrast, Phillips had not earned his PhD at the time of his hire over Plaintiff. (Ex. 26).

167.   Denied. Defendant's selections of Kruczek (age 39), Pertner (age 33), Deng (age 35), and Phillips (age 27), were motivated by discriminatory animus toward Plaintiff based on his age (59). (Ex. 13 at No. 10). Denied. Defendant failed to hire Plaintiff due to his age, and the reasons proffered by Defendant are pretext for age discrimination. Foremost, Plaintiff maintained a satisfactory performance rating during his full-time tenure with Defendant. (Ex. 18). Further, there is no evidence in the record that Defendant implemented a reduction of the Political Science Department's workload budget so as to require the elimination of Plaintiff's full-time contract, as Banaszak "[did] not recall" whether the budget was ever in fact reduced. (Ex. 15 at 60:3-12). Moreover, Defendant has failed to set forth a non-discriminatory reason why this position could not have been created for Plaintiff, or why the "budgetary constraints" that resulted in the non-renewal of his contract did not apply to the creation of an identical position for Kruczek the very next semester. (Ex. 13 at No. 11). Defendant's representations that graduate student training necessitated Plaintiff's non-hires are similarly pretextual, as

Defendant set forth contradictory graduate student hiring policies. In her deposition, Banaszak denied that the Political Science Department reserves teaching positions specifically for graduate students. (Ex. 15 at 50:7-10). Hojnacki, by contrast, testified that Defendant does in fact "hold open some classes" for graduate students to teach. (Ex. 10 at 64:21-65:2). Defendant's stated prioritization of quantitative methods instruction as a reason for Plaintiff's non-hires is similarly pretextual, in that Plaintiff underwent extensive quantitative methods training in the course of his doctoral training and previously instructed in research methods. (Ex. 1; Ex. 2 at 33:15-22). As to his comparators, Plaintiff's qualifications were superior for each of the courses and positions identified.

*Gregory Kruczek*

Plaintiff is more qualified in international relations instruction than Kruczek. (Ex. 1; Ex. 25 at No. 6). Plaintiff earned his Masters of Arts and PhD in International Relations Theory from the University of Kentucky and has since taught myriad courses on the subject matter for Defendant and other institutions. (Ex. 1). Kruczek, by contrast, had only taught one related course more than ten years ago prior to his earning any advanced degree in the field of political science. (Ex. 25). Moreover, said course was not based in international relations theory, rather, Kruczek testified only that he chose to teach the course through an international relations theory lens. (Ex. 20 at 29:1-14). Plaintiff has extensive instruction

experience in Middle East courses including, but not limited to, International

Political Economy, International Development, International Relations Theory,

Politics of Developing Nations. (Ex. 1; Ex. 2 at 78:25-79:14). By way of further

response, Kruczek had never taught International Relations in the Middle East

prior to his hire by Defendant. (Ex. 25). As compared to Kruczek's brief visits to

the Middle East, Plaintiff worked extensively in the Middle East on a long-term

basis in the capacity of Program Director of the Kazakhstan Institute of

Management, Economics, and Strategic Research's Executive MBA Program. (Ex.

1; Ex. 2 at 94:24-95:4). During his tenure in the Middle East, Plaintiff built an

internship program from the ground up, thereby qualifying him substantially more

for the Internship Coordinator role awarded to Kruczek. (Ex. 1; Ex. 2 at 78:23-

79:14).

### Elizabeth Pertner

The record establishes that Plaintiff is vastly more qualified to teach Comparing

Politics Around the Globe than Pertner. At the time of Defendant's selection of

Pertner over Plaintiff, she had taught a mere three sections of relevant courses at

another institution prior to her hire. (Ex. 21).  Pertner's instruction of American

Foreign Policy for Defendant, a distinct and American-centric course, did not

qualify her above Plaintiff to teach Comparing Politics Around the Globe. (Ex. 21).

Plaintiff, by contrast, has an expansive record of teaching Comparing Politics

Around the Globe for Defendant. (Ex. 1). Plaintiff further taught comparative

political science courses for Defendant since 2006 and other institutions since

2004. (Ex. 1).

*Qing Deng*

At the time of her hire over Plaintiff, Deng had never served as a primary

instructor. (Ex. 14). Plaintiff, by contrast, had specifically taught Comparing

Politics Around the Globe for Defendant as a primary instructor. (Ex. 1). Plaintiff

further taught comparative political science courses for Defendant since 2006 and

other institutions since 2004. (Ex. 1).

*Joseph Phillips*

Plaintiff's twenty-eight-year tenure as an instructor in the field of Political Science

exceeds Phillips' age of twenty-seven. (Ex. 1). Moreover, Plaintiff underwent

rigorous statistical methods training in his PhD program and previously taught

Research Methodologies at the Kazakhstan Institute of Management, Economics,

and Strategic Research. (Ex. 1; Ex. 2 at 33:15-22). By contrast, Phillips had not

earned his PhD at the time of his hire over Plaintiff. (Ex. 26).

168.   Admitted.

169.   Admitted. By way of further response, Plaintiff has sufficiently

established pretext so as to overcome summary judgment. Once a plaintiff

establishes a *prima facie* case of age discrimination, the burden shifts to the

defendant to articulate a legitimate, non-discriminatory reason for the adverse job action. Sharp v. Penske Buick GMC, 686 F. Supp.2d 530, 535 (E.D. Pa. 2010). If the defendant articulates a reason, the burden shifts back to the plaintiff to establish that the asserted reason is a pretext for age discrimination. Smith v. City of Allentown, 589 F.3d 684, 690 (3d Cir. 2009). To survive summary judgment on the issue of pretext, a plaintiff need only to point to some evidence from which a trier of fact "could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). A plaintiff can establish the foregoing by "demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence." Id. at 765. Plaintiff can establish pretext for purposes of overcoming summary judgment because Defendant's articulated reasons are internally contradictory and refuted by evidence in the record. A plaintiff can prove pretext by presenting "evidence contradicting the core facts put forth by the employer as its legitimate reason for its decision." Tomasso, supra, 445 F.3d at 706 (citing Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005)). "[I]f a plaintiff has come forward with sufficient evidence to allow a finder of fact to discredit the

employer's proffered justification, she need not present additional evidence of discrimination beyond her *prima facie* case to survive summary judgment." <u>Burton v. Teleflex</u>, 707 F.3d 417, 427 (3d Cir. 2013).

170.   Admitted.

SIDNEY L. GOLD & ASSOC., P.C.

By:   **/s/ Sidney L. Gold, Esquire**
SIDNEY L. GOLD, ESQUIRE
I.D. No. : 21374
1835 Market Street, Suite 515
Philadelphia, PA 19103
215.569.1999
sgold@discrimlaw.net
Attorneys for Plaintiff

DATED:  December 22, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I caused a true and correct copy of **Plaintiff's Response to Defendant's Statement of Facts** to be served by ECF upon the following:

John A. Snyder, Esquire
McQuaide Blasko Law Offices
811 University Drive
State College, PA 16801
Email: jasnyder@mqblaw.com

Philip K Miles, III, Esquire
McQuaide Blasko Law Offices
811 University Drive
State College, PA 16801
Email: pkmiles@mqblaw.com

SIDNEY L. GOLD & ASSOC., P.C.

By:   **/s/ Sidney L. Gold, Esquire**
SIDNEY L. GOLD, ESQUIRE
I.D. No. : 21374
1835 Market Street, Suite 515
Philadelphia, PA 19103
215.569.1999
sgold@discrimlaw.net
Attorneys for Plaintiff

DATED:  December 22, 2022