## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES W. BINNEY,

   Plaintiff,

  v.

THE PENNSYLVANIA STATE
UNIVERSITY,

   Defendant.

No. 4:21-CV-01297

(Chief Judge Brann)

## MEMORANDUM OPINION

### JUNE 9, 2023

As Plaintiff James Binney stated in his deposition for this case: "belief is one thing but evidence is another." This matter is relatively straightforward. Binney is an instructor for Defendant The Pennsylvania State University ("Penn State"), and, at a time when Binney was just shy of 60 years old, Penn State selected other instructors to teach classes for which Binney believes he is more qualified. Each of the instructors selected was younger than Binney; some were still graduate students working toward a Ph.D. Binney then filed suit against Penn State, alleging that the University discriminated against him on account of his age.

The parties do not genuinely dispute any material facts, which are essentially that Binney is of a certain age, he was not selected to teach the courses at issue, and younger candidates were chosen instead. Penn State argues that it had legitimate, non-discriminatory reasons for selecting the younger instructors, and has provided

the curriculum vitae, and other evidence, to support its rationale for hiring each of them. As a matter of law, then, the burden now shifts to Binney, who must cite evidence from which a reasonable factfinder could determine that Penn State's stated reasons for hiring the younger instructors were pretextual and intended to mask age-based discriminatory animus. Binney fails to cite such evidence, instead relying on his own belief that he is supremely qualified, coupled with disparaging and somewhat inflammatory remarks about his younger colleagues.

Belief is, indeed, one thing, but for this matter it is insufficient to rebut Penn State's evidence of legitimate, non-discriminatory hiring rationale. Evidence is not just another thing, it is the only thing that matters in the law; it is precisely what is missing in this case. For this reason, the Court grants Penn State's Motion for Summary Judgment.

## I.    BACKGROUND

### A.    Undisputed Facts

At the time this Motion was filed, Binney was fifty-nine (59) years old, residing in State College, Pennsylvania.[1] Binney is currently employed by Penn State as a part-time, non-tenured instructor in the Department of Political Science in the College of Liberal Arts.[2] He also works within Penn State's "World Campus" online program.[3] Binney was employed by Penn State as a full-time fixed-term

---

[1]   Doc. 27 ¶ 1; Doc. 35 ¶ 1.
[2]   Doc. 27 ¶ 5; Doc. 35 ¶ 5.
[3]   *Id.*

contract lecturer from approximately 2008 through May 2018.[4] Binney was not selected to teach a number of courses during the Fall 2019 and Spring 2020 semesters, including International Relations Theory, International Relations in the Middle East, Independent Studies, Scientific Study of Politics, and Comparing Politics around the Globe.[5] He was also not selected for the position of Internship Coordinator or designated as a full-time, non-tenured instructor.[6] The following younger instructors were selected for those courses instead: Gregory Kruczek; Elizabeth Pertner; Qing Deng; and Joseph Phillips.[7]

###   B.   Procedural History

Binney initiated this lawsuit on July 23, 2021 and filed the operative Amended Complaint on July 30, 2021.[8] Penn State filed an Answer on September 24, 2021.[9] Discovery has closed, and Penn State filed a Motion for Summary Judgment on November 7, 2022.[10] That motion has been fully briefed and is ripe for disposition.[11]

## II.   LAW

The legal standard for summary judgment is well established. "One of the principal purposes of the summary judgment rule is to isolate and dispose of

---

[4]   Doc. 27 ¶ 17; Doc. 35 ¶ 17.
[5]   Doc. 27 ¶ 52; Doc. 35 ¶ 52.
[6]   Doc. 27 ¶ 55; Doc. 35 ¶ 55.
[7]   Doc. 27 ¶¶ 52-56, 63, 68, 72, 76; Doc. 35 ¶¶ 52-56, 63, 68, 72, 76.
[8]   Docs. 1, 6.
[9]   Doc. 11.
[10]   Docs. 23, 26.
[11]   Docs. 26, 27, 28, 29, 34, 35, 37.

factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."[12] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13] "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[14] "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[15] "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[16]

"The inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[17] Thus, "if the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury

---

[12] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[13] Fed. R. Civ. P. 56(a).
[14] *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Celotex*, 477 U.S. at 322).
[15] *Clark*, 9 F.3d at 326.
[16] *Id*.
[17] *Liberty Lobby, Inc*., 477 U.S. at 252.

could return a verdict for the plaintiff on the evidence presented."[18] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[19] "The judge's inquiry, therefore, unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"[20]

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[21] "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[22]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be

---

[18]  *Id.*
[19]  *Id.*
[20]  *Id. (quoting Improvement Co. v. Munson*, 81 U.S. 442, 447 (1871)).
[21]  *Celotex*, 477 U.S. at 323 (internal quotations omitted).
[22]  *Id.*

resolved in favor of either party."[23] For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) citing to particular parts of materials in the record that go beyond mere allegations; (ii) showing that the materials cited do not establish the absence or presence of a genuine dispute; or (iii) showing that an adverse party cannot produce admissible evidence to support the fact.[24]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[25] Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[26] On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[27]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[28] "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for

---

[23] *Liberty Lobby, Inc.*, 477 U.S. at 250.
[24] Fed. R. Civ. P. 56(c)(1).
[25] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003).
[26] Fed. R. Civ. P. 56(e)(2).
[27] *Id*. at (c)(3).
[28] *Liberty Lobby, Inc.*, 477 U.S. at 249.

that party."[29] "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[30]

## III.   ANALYSIS

Binney's Amended Complaint asserts 16 counts:

1.   Three Counts of Age Discrimination (Failure to Hire) under the Age Discrimination in Employment Act ("ADEA") for the Government and Politics of Western Europe courses (Summer 2019, Fall 2019, Spring 2020)

2.   One Count of Age Discrimination (Failure to Hire) under the ADEA for the Comparative Politics of Western Europe course (Fall 2019)

3.   Two Counts of Age Discrimination (Failure to Hire) under the ADEA for the International Relations Theory courses (Fall 2019 and Fall 2020)

4.   Two Counts of Age Discrimination (Failure to Hire) under the ADEA for the International Relations in the Middle East courses (Fall 2019 and Spring 2020)

5.   Two Counts of Age Discrimination (Failure to Hire) under the ADEA for Independent Studies (Fall 2019 and Spring 2020)

6.   One Count of Age Discrimination (Failure to Hire) under the ADEA for Internship Coordinator Position (Spring 2020)

7.   Two Counts of Age Discrimination (Failure to Hire) under the ADEA for Comparing Politics Around the Globe course (Fall 2019)

8.   One Count of Age Discrimination (Failure to Hire) under the ADEA for Scientific Study in Politics course (Fall 2019)

9.   Two Counts of Age Discrimination (Failure to Hire) under the ADEA for Full-Time, Non-Tenured Lecturer position (Fall 2019 through Spring 2020).[31]

---

[29]   *Id.*

[30]   *Id.* at 249-50 (internal citations omitted).

[31]   Doc. 6 ¶¶ 28-75.

7

Binney has stipulated that he will not be pursuing Counts I-IV, so the Court dismisses them outright and will not address them further.[32]

## A.   Failure to Hire Under the ADEA

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[33] In order to establish a prima facie case of age discrimination under the ADEA, a plaintiff must show that he: (1) was over forty years of age; (2) was qualified for the position in question; (3) suffered an adverse employment decision; and (4) was replaced by a sufficiently younger person to permit an inference of age discrimination.[34] Age discrimination cases brought under the ADEA are analyzed under the *McDonnell Douglas*[35] burden-shifting framework:

> Under *McDonnell-Douglas*, the employee must make out a prima facie case of intentional discrimination. Whether the employee has done so is a question of law for the court. If the plaintiff establishes a prima facie case, the defendant has a "relatively light burden" to produce evidence of a legitimate, non-discriminatory reason for its actions. The burden then shifts back to the plaintiff to show that the given reason was a pretext for the defendant's actual discriminatory motive. To avoid summary judgment, then, [Binney needs] to establish a prima facie case of discrimination and produce evidence that would allow a factfinder

---

[32] Doc. 27 ¶ 51, Ex. A (Binney Dep. Tr.) 69:1-23; Doc. 35 ¶ 51.

[33] 29 U.S.C. § 623(a)(1).

[34] *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 330 (3d Cir. 1995).

[35] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1983).

to reasonably conclude that any non-discriminatory reasons articulated by [Penn State] were pretextual.[36]

The Court will use this framework to analyze the claims below.

### 1. Counts V-VIII: International Relations Theory and International Relations in the Middle East Courses

Binney claims that Penn State discriminated against him on account of his age when it declined to hire him, and instead hired Kruczek, to teach International Relations Theory and International Relations in the Middle East during the Fall 2019 and Spring 2020 semesters.[37]

The parties do not dispute that Binney has established a prima facie case of age discrimination for these counts: he was over 40 years old; he was not selected to teach these courses; and Kruczek—a younger instructor—was selected instead. Following *McDonnel Douglas*, then, the burden shifts to Penn State, which alleges that it had legitimate, non-discriminatory reasons for selecting Kruczek for these particular courses during the Fall 2019 and Spring 2020 semesters.[38] Specifically, Kruczek has a Ph.D. in Government/International Affairs, with a focus on Middle Eastern politics; he had also previously taught Middle East-related courses at other universities; and he had visited the Middle East as part of his studies many times.[39] The Court's review of the record and briefing found no genuine dispute of material

---

[36] *Cooper v. Thomas Jefferson Univ. Hosp.*, 743 F. App'x 499, 501-02 (3d Cir. 2018) (internal citations omitted).

[37] Doc. 6 ¶¶ 40-45.

[38] Doc. 29 at pp. 14-16.

[39] *Id*. at p. 14; Doc. 27 ¶¶ 57, 107, 109.

9

fact regarding Kruczek's stated qualifications beyond Binney's subjective opinions about how those credentials compare to his own. Given these qualifications, the Court concludes that Penn State has proffered a legitimate, non-discriminatory reason for hiring Kruczek over Binney.

The burden then shifts to Binney to produce evidence that would allow a factfinder to reasonably conclude that Penn State's stated reasons for hiring Kruczek were pretextual and motivated by discriminatory reasons based on Binney's age. The Court has reviewed the record and concludes that Binney has failed to introduce evidence that would lead a reasonable factfinder to find that Penn State's reasons for hiring Kruczek were pretextual and motivated by discriminatory animus.

While Binney does point out that Kruczek himself testified that, prior to joining Penn State as an instructor, he had never "[taught] a course that focused on the Middle East," Binney fails to address why he wrote the following response to Penn State's EEOC position statement: "There is only one class that [Kruczek] has taught where he has more expertise than I do and that's is Middle East [International Relations]."[40] During his deposition, counsel for Penn State asked Binney if he wrote this statement, to which he responded: "Yes. But, you know, he doesn't have more expertise in the Middle East than I do."[41] Binney then went on to disparage Kruczek's qualifications while boasting about his own, concluding that he is a

---

[40] Doc. 27, Ex. 13 (EEOC FOIA Request)  at p. 735.
[41] *Id.*, Ex. 1 (Binney Dep. Tr.) 94:14-25.

"much better and more experienced teacher than [Kruczek] is by a magnitude of 100."[42] This is certainly not evidence upon which reasonable factfinders could rely.

Binney's statements, viewed alongside the evidence presented and with respect to all claims, leads the Court to determine that Binney's allegations are based on his own subjective belief that he is more qualified than Kruczek and the other instructors chosen for the courses at issue. And as Penn State accurately points out in its briefing, a "plaintiff's subjective belief that [he] was more qualified for the job does not create an issue of fact for the jury."[43] Put differently, "it is the perception of the decisionmaker that is relevant, not the plaintiff's perception of [him]self."[44] It would not be reasonable for that decisionmaker to determine that someone with Kruczek's qualifications, specifically a scholar with a Ph.D. in International Affairs, is not qualified to teach International Relations courses.

Binney may well believe that he is more qualified than Kruczek, but Binney's subjective beliefs about his own qualifications do not nullify, nor do they contradict, Penn State's evidence supporting Kruczek's suitability for the role (*e.g.*, his degrees, travel to the Middle East, classroom experience, etc.). This evidence is apparent in

---

[42]   *Id*. at 95:5-24 ("He's a complete rookie . . . [h]e doesn't have anything near my experience. And teaching a Middle East politics course would be easy for me."), 96:17-20 ("I mean, if you look at the resumés, there's just nothing there in what he has compared to me. Absolutely not. It's so evident.").

[43]   *Sadowski v. Greated Nanticoke Area Sch. Dist.*, No. 3:10-cv-00242, 2013 U.S. Dist. LEXIS 38772, at *20 (M.D. Pa. Mar. 20, 2013) (citing *Sarmiento v. Montclair State Univ.*, 513 F. Supp. 2d 72, 89 (D.N.J. 2007) (internal quotations and additional internal citation omitted).

[44]   *Dungee v. Ne Foods, Inc.*, 940 F. Supp. 682, 689 (D.N.J. 1996) (internal quotations and citations omitted).

Kruczek's curriculum vitae, which Penn State attached to its Motion.[45] His curriculum vitae lists information about his doctorate, teaching experience in multiple roles across many courses, research experience (particularly with respect to the Middle East), publications, awards, grants, and academic presentations and speaking engagements.[46] Because the Court finds an absence of evidence rationally supporting Binney's claims as to these counts, Penn State's Motion is granted and judgment is entered in its favor as to Counts V-VIII.

### 2.    Counts IX-X: Independent Study Courses

Binney claims that Penn State discriminated against him on account of his age when it declined to hire him, and instead hired Kruczek, to teach Independent Study courses during the Fall 2019 and Spring 2020 semesters.[47] Penn State contends that it does not hire or select instructors to oversee Independent Study courses; rather, students initiate Independent Studies with their instructors.[48] Independent Studies are not even considered formal courses; instructors are not compensated for overseeing them and Independent Studies do not count toward an instructor's courseload.[49] Binney does not genuinely dispute these characteristics of Independent Studies.

---

[45]   Doc. 27, Ex. 9 (Kruczek curriculum vitae).
[46]   *Id.*
[47]   Doc. 29 at p. 16.
[48]   *Id.*
[49]   *Id.*

These claims fail because Binney has not stated a prima facie claim of age discrimination for these courses. He fails to point to any evidence demonstrating that Penn State declined to choose Binney in the first place and then hired, selected, or otherwise chose Kruczek over Binney for the Independent Study courses. Indeed, according to the evidence, students initiate their own Independent Study projects and Penn State is not involved in choosing the overseeing instructors for those projects; these projects do not even count as formal courses for purposes of the advising instructors' courseloads. Binney therefore fails to satisfy the first and fourth prongs required for an ADEA age discrimination claim. Binney did not suffer an adverse employment action by not being selected for a position that does not actually involve selection by the University. Accordingly, he could not have been "replaced" by Kruczek when Penn State did not make an affirmative hiring or selection determination in the first place; the students decide who will oversee their independent study projects. For these reasons, the Court need not address these counts further.

Because the Court finds an absence of evidence rationally supporting Plaintiff's claims as to these counts, Penn State's Motion is granted as to Counts IX-X.

### 3.    Count XI: Internship Coordinator Position

Binney claims that Penn State discriminated against him on account of his age when it declined to hire him, and instead hired Kruczek, for the position of Internship

Coordinator during the Spring 2020 semester. Penn State maintains that it selected Kruczek for this position because he had similar experience with Washington, D.C. internship programs and had specifically worked with Virginia Tech's "Washington Semester" program.[50] Binney does not dispute Penn State's testimonial evidence supporting its assertion that Kruczek was selected for those reasons, but he contends that "[d]uring his tenure in the Middle East, [he] built an internship program from the ground up, thereby qualifying him substantially more for the coordinator role awarded to Kruczek."[51] To support this, Binney cites to a portion of his deposition transcript that says nothing about an internship program.[52] The Court assumes he meant to cite to a different portion of his transcript, where he stated that he served as an Internship Coordinator "while he was living in Kazakhstan in the '90s."[53] A reasonable factfinder would not find Kruczek's experience inferior to Binney's to the extent required to establish pretext.

Again, Binney has failed to provide evidence that Penn State's reasons for selecting Kruczek were pretextual. He does not dispute the accuracy of Kruczek's credentials as set forth in the curriculum vitae[54] (which supports Penn State's stated

---

[50] Doc. 27 ¶¶ 56-57.

[51] *Id*. ¶ 127.

[52] *Id*., Ex. 2 (Binney Dep. Tr.) 78:23-79:14.

[53] *Id*. at 88:14-89:7.

[54] Doc. 27, Ex. 9 (Kruczek curriculum vitae) (experience includes teaching a "Diplomacy Lab" to undergraduate students in Virginia Tech's Washington Semester Global Engagement Program, as well as working with the United States Department of State and non-governmental organizations).

reasons for hiring him), and he cites to no contrary evidence beyond mere allegations and his own subjective beliefs about his own qualifications. The Court therefore finds an absence of evidence rationally supporting Binney's claims as to this count; Penn State's Motion is therefore granted and Count XI is dismissed.

### 4.    Counts XII-XIII: Comparing Politics Around the Globe Courses

Binney claims that Penn State discriminated against him on account of his age when it declined to hire him, and instead hired Pertner and Deng, to teach the Comparing Politics Around the Globe courses during the Fall 2019 semester. Penn State argues that it had legitimate, non-discriminatory reasons for selecting Pertner and Deng.[55]

Pertner was a graduate student in the Political Science Department at George Washington University, and she had previous experience teaching similar courses.[56] She was also selected because she was located in Washington., D.C., where the course was to be taught.[57] Deng was a graduate student at Penn State and was appointed to teach this course as part of her training as a graduate student.[58] Deng had also worked as a teaching assistant to another instructor who taught a similar

---

[55]   Doc. 29 at pp. 20-21.
[56]   Doc. 27 ¶ 130.
[57]   *Id*. ¶ 137.
[58]   Doc. 29 at pp. 22-23.

class, and Deng possessed "quantitative skills."[59] The Court has found no genuine

dispute of these specific credentials of Pertner and Deng, but Binney maintains that

they were selected because of their age.

The onus is therefore on Binney to direct the Court to evidence that Penn

State's stated reasons for hiring Pertner and Deng are pretextual. As with Kruczek,

Binney again states only his own subjective opinion about Pertner and Deng's

qualifications. Regarding Pertner, in Binney's deposition, he testified that "her

resume at that time was extremely thin . . . not even close to what [he] could do."

The testimony continued:

> Q:    Aside from your belief that Elizabeth Perter is less experienced and less
>       qualified than you, do you have any other evidence to suggest that Penn
>       State failed to hire you to teach her section of Comparing Politics
>       Around the Globe in the fall of 2019 because of your age?
> A:    Yeah. My experience. Okay? I have an amazing amount of teaching
>       experience. I am an excellent teacher. I am a political scientist. I can
>       teach anything.
> . . .
>
> Q:    -- aside from your belief that Elizabeth Pertner is less qualified than
>       you, do you have any other evidence to suggest that Penn State failed
>       to hire you for her section of Comparing Politics Around the Globe in
>       the fall of 2019 because of your age?
> A:    . . . I don't know. You know, I just feel that you have to look at age.
>       And I was very much experienced.[60]

---

[59]   *Id*. at p. 23. While Penn State's briefing does not describe what these skills entail, Deng's
curriculum vitae lists that she is proficient in a number of statistical and data programming
languages, including R, STATA, and ArcGIS. Doc. 27, Ex. 11 (Deng curriculum vitae).

[60]   Doc. 27, Ex. 1 (Binney Dep. Tr.) 104:23-106:12.

Similarly, when asked why Deng is less qualified than he, Binney responded "[b]ecause they hired her for training purposes," and "if you're hiring someone for training purposing (sic), that means they have zero experience."[61]

Penn State's Motion attached curricula vitae for both Pertner and Deng, and both of these documents support Penn State's sated reasons for hiring them.[62] Pertner's curriculum vitae lists degrees, skills, a publication, fellowships and grants, awards, courses taught, speaking engagements, and conference presentations.[63] Deng's curriculum vitae lists multiple degrees, publications, working papers, courses taught, policy reports, conference presentations, awards and grants, fieldwork, and programming and language skills.[64]

The Court does not find a genuine dispute as to the credentials listed on these curricula vitae, and Binney has failed to cite evidence other than his own subjective beliefs about his own qualifications compared to theirs. Without such evidence, a reasonable factfinder could not find that Penn State's stated reasons for hiring Pertner and Deng were pretextual.  Because the Court finds an absence of evidence rationally supporting Binney's claims as to this count, Penn State's Motion is granted and Counts XII and XII are also dismissed.

---

[61]  *Id*. at 109:17-22.
[62]  Doc. 27, Ex. 10 (Pertner curriculum vitae) and 11 (Deng curriculum vitae).
[63]  *Id*., Ex. 10 (Pertner curriculum vitae).
[64]  *Id*., Ex. 11 (Deng curriculum vitae).

### 5.    Count XIV: Scientific Study of Politics Course

Binney next claims that Penn State discriminated against him on account of his age when it declined to hire him, and instead hired Phillips, to teach the Scientific Study of Politics course during the Fall 2019 semester.[65] Penn State argues that it selected Phillips for this course because he possessed a "strong background in statistical analysis and methodology," including "qualifications in the areas of the Social Science Research Process, political methodology, and data analysis[.]"[66] Binney disagrees, alleging that Phillips was hired for purposes of discriminating against Binney on account of his age.

Because Penn State has provided legitimate, non-discriminatory reasons for having hired Phillips, it is Binney's responsibility to cite evidence demonstrating that Penn State's stated reasons for hiring Phillips were pretextual. As with the other instructors, Penn State attached Phillips' curriculum vitae to its Motion.[67] His curriculum vitae lists multiple degrees, peer and editor-reviewed publications, working papers (both completed and in progress), teaching experience, grants and awards, presentations, research experience, pedagogical training, and skills.[68] The Court finds no genuine dispute as to the credentials listed.

---

[65]   Doc. 6 ¶¶ 67-69
[66]   Doc. 29 at p. 23.
[67]   Doc. 27, Ex. 12 (Phillips curriculum vitae).
[68]   *Id.*

Binney's deposition testimony about Phillips is a familiar refrain: "He was a very young graduate student who had not yet gotten his Ph.D., that they chose over me to teach that class," with "[a]lmost zero teaching experience."[69] Binney's testimony continues:

> Q:    Aside from your belief that Joseph Phillips is less experienced and qualified than you, do you have any other evidence to suggest that Penn State failed to hire you [due to your age?]
>
> A:    Yeah. I'm a tremendous teacher, and I've taught subjects involving this subject matter for 20-some years, at many universities. That's the evidence.
>
> Q:    Is that different from your belief that Joseph Phillips is less experienced and less qualified than you?
>
> A:    Well, a belief is one thing but evidence is another. And the evidence shows that I am highly qualified and got great reviews at Penn State, teaching.[70]

What Binney misses here, and misses for all of his claims, is that his burden is not to prove that *he* is qualified—indeed, the parties do not dispute that Binney is qualified to instruct at the college level—but, instead, is to prove that Penn State's *stated reasons for selecting other instructors* are pretextual and mask age-based discriminatory animus. He has failed to do so, insisting that his statements about his own qualifications are sufficient proof of the others' deficiencies.

Because there is an absence of evidence rationally supporting Binney's claims as to this count, Penn State's Motion is granted and judgment is entered in Penn State's favor as to Count XIV.

---

[69]    Doc. 27, Ex. 1 (Binney Dep. Tr.) 118:19-23.
[70]    *Id*. at 121:18-122:9.

### 6.   Counts XV-XVI: Full-Time, Non-Tenured Lecturer Position

Finally, Binney claims that Penn State discriminated against him on account of his age when it declined to hire him, and instead hired Kruczek, as a full-time, non-tenured lecturer during the Fall 2019 and Spring 2020 semesters (Count XV).[71] He also alleges as a separate Count (Count XVI) that Penn State discriminated against him on account of his age by declining to renew his contract for this position.[72] The Court finds Count XV duplicative of Count XVI, as Binney makes the same arguments here (*i.e.*, that Kruczek is not qualified and that Binney is qualified). But as with Count XV, Binney fails to support his allegations with evidence from which a factfinder could  glean pretext. Count XVI fails because Binney has not provided a comparator, and if Binney intends for Kruczek to serve as the comparator, he has still failed to provide evidence that Kruczek was offered the position for pretextual reasons. A reasonable factfinder could not find, based on Binney's subjective beliefs and opinions alone, that Penn State offered the position to Kruczek for pretextual reasons.

Therefore, because there is an absence of evidence rationally supporting Binney's claims, Penn State's Motion is granted as to Counts XV and XVI.

---

[71] Doc. 6 ¶¶ 70-72.

[72] *Id.* ¶¶ 73-75.

## IV.    CONCLUSION

For the reasons stated, the Court GRANTS Penn State's Motion for Summary

Judgment. An appropriate Order follows.


BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge